UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN DeMURIA and | : | |
| MICHAEL DeMURIA | : | |
| | : | |
| VS. | : | NO. 3:00CV01591(AHN) |
| | : | |
| ALBERT F. HAWKES and | : | |
| JUDITH A. MARSHALL | : | APRIL 1, 2004 |

## CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

The circumstances attending the summary judgment motions now before the court are quite unusual.  There has been absolutely no discovery yet conducted in this case by any of the parties.  The reason is that the defendants moved at the very outset of this litigation to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted.  The court granted that motion and the matter then was appealed.  When the dismissals were reversed, and the case remanded to this court, the court immediately assigned the matter to Magistrate Judge Fitzsimmons for settlement discussions and stayed all other proceedings pending an attempt at settlement.  When settlement discussions were unfruitful, the court again conferenced the case and directed that the defendants promptly move for summary judgment.  Accordingly, the defendants have submitted only

their own brief and self-serving affidavits in support of their motions.

Summary judgment generally may not be granted until after the plaintiff has had time to conduct necessary discovery on the issues addressed by the motion. Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989); Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996); Doe v. Batson, 548 S.E.2d 854 (S.C. 2001). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom v. United States Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000). That ground alone is a sufficient basis for denying the present motions.

The plaintiffs in this case did considerable pre-filing investigation before bringing suit, however. The results of their pre-filing investigation are attached to the detailed affidavit of the plaintiff Michael DeMuria as Exhibits A through M. Mr. DeMuria's affidavit, together with the thirteen exhibits, are more than sufficient to defeat the pending motions on their merits. This evidence shows that the self-serving claims of the defendants, to the extent that they have any relevance at all to the issues in this litigation, are simply false. The evidence further shows:

- The plaintiffs are married and resided together at all times material to this litigation. (Affidavit of Plaintiff Michael DeMuria, ¶ 1)

2

- At the times of the events giving rise to this litigation, the plaintiffs I resided at Six College Street in Clinton, Connecticut.  (Id. ¶ 2)

- At the times of the events giving rise to this litigation, the defendant Albert Hawkes was a well-known figure in Clinton.  He was active in local politics, ran for public office and was a corporal in the Clinton Police Department.  (Id. ¶ 3)

- The plaintiff Michael DeMuria and the defendant Judith Marshall are personally acquainted, since both are employed at the Yale-New Haven Hospital. (Id. ¶ 4)

- On April 14, 1998, the defendant Marshall and her husband initiated civil litigation against a condominium development and the plaintiffs, involving an issue of run-off of surface water onto their property.  At about the same time, Judith Marshall began harassing the plaintiffs.  (Id. ¶ 5)

- In April of 1998, defendant Marshall and her husband advised the plaintiffs that they owned many firearms and might use them against the plaintiffs.  (Id. ¶ 6)

- On the afternoon of September 11, 1998, defendant Marshall telephoned the Connecticut Water Company, represented that she was a member of the plaintiffs' family, stated that the plaintiffs were moving out of the area and requested that the plaintiffs' water be shut off.  As a result, the

3

Connecticut Water Company attempted to turn off the plaintiffs' water service. (Id. ¶ 7; Exhibit A)

- The plaintiffs reported this matter to the defendant Hawkes, who promised to investigate it but did not do so.  (Id. ¶ 8)

- At or about the same time, defendant Hawkes advised the plaintiffs not to have dealings with any police officer other than himself and that he would take charge of all complaints the plaintiffs might have against defendant Marshall. (Id. ¶ 9)

- The plaintiffs asked defendant Hawkes directly whether he had any personal relationship with defendant Marshall.  Defendant Hawkes responded that, although as a resident of a small town he knew who she was, he had no other relationship with her or with her husband.  The plaintiffs subsequently learned that these statements by defendant Hawkes were false.  (Id. ¶ 10)

- On or about September 30, 1998, the defendant Marshall mailed a card to the plaintiff Michael DeMuria, obviously with the intent that it be seen by the plaintiff Susan DeMuria, which she signed with the pseudonym "Nan" and in which she stated:  "The other day was great lets get together and do it again. Call me.  Love."  (Id. ¶ 11; Exhibit B)

- On November 17, 1998, defendant Hawkes placed an entry in the Clinton Police Department internal journal, at page 362, stating: "A number of

4

PSR's have been taken out for Michael Demuria, 6 College St.  As we know, there is an ongoing dispute with his neighbors.  If there are any new complaints from Demuria, please put a copy in my box.  Thanks Gunny"   (Id. ¶ 12; Exhibit C)

• Beginning on November 24, 1998, the defendant Marshall made repeated telephone calls at all hours to the plaintiffs' home.  Some of these calls were threatening in nature, others harassing.  The calls were made on November 24, 1998, at 11:21 a.m.; on November 24, 1998, at 5:25 p.m.; on November 27, 1998, at 8:50 a.m.; on November 30, 1998, at 5:06 p.m.; on December 1, 1998, at 5:54 p.m.; on December 9, 1998, at 6:21 p.m.; on December 9, 1998, at 7:17 p.m.; on December 10, 1998, at 7:05 a.m.; on December 10, 1998, at 4:18 p.m.; on December 10, 1998, at 6:41 p.m.; on December 11, 1998, at 1:17 p.m.; on December 12, 1998, at 11:15 a.m.; and on December 15, 1998, at 11:30 a.m.  The plaintiffs reported these events to defendant Hawkes on December 15, 1998.  (Id. ¶ 13)

• Defendant Hawkes advised the plaintiffs to contact the Southern New England Telephone Company to have a device placed on their telephone that would make a record of the source of the threatening and harassing telephone calls.  However, he provided the plaintiffs with incorrect information for the procedure involved in doing so, with the result that there was a long delay before

5

the device could be installed.  During the entire period of the delay, the calls continued.  (Id. ¶ 14)

- The plaintiffs eventually succeeded in having the device placed on theirr telephone.  The threatening and harassing calls stopped that day.  The calls resumed, however, immediately after the telephone company's monitoring device was discontinued two weeks later, demonstrating by strong circumstantial evidence that defendant Hawkes had tipped off defendant Marshall to the monitoring.  (Id. ¶ 15)

- At that time, the plaintiffs contacted defendant Hawkes again and again asked him to have the device re-installed on their telephone.  Defendant Hawkes told the plaintiffs that the telephone company was unwilling to do so.  When the plaintiffs contacted the telephone company about this, however, they were advised that defendant Hawkes had requested that the device not be re-installed.  (Id. ¶ 16)

- On January 13, 1999, defendant Marshall telephoned Sweitzer Waste Removal, which provided trash removal service to the plaintiffs' home, and instructed Sweitzer to discontinue the service.  (Id. ¶ 17)

- On January 25, 1999, defendant Marshall telephoned Testori Excavating Company in Madison, Connecticut, represented herself as being a member of the plaintiffs' family, and placed an order to have their entire back

6

yard excavated.  (Id. ¶ 18; Exhibit D)

- The plaintiffs learned of these events shortly before the excavation was scheduled to take place and were able to persuade Testori Excavating Company not to do so.  (Id. ¶ 19)

- The plaintiffs thereupon reported this event to the defendant Hawkes who established to a certainty that defendant Marshall had made the telephone call to Testori Excavating Company and so advised the plaintiffs.  (Id. ¶ 20; Exhibits D, E)

- At that time, approximately January 27, 1999, Hawkes promised the plaintiffs that he would promptly apply for a warrant to arrest defendant Marshall. In fact, however, he did not do so.  Thereafter, when the plaintiffs periodically inquired about the status of the case, defendant Hawkes provided a series of false excuses for his failure to act.  (Id. ¶ 21)

- Hawkes stated that Mrs. Marshall would never be arrested because she was his friend.  (Id. ¶ 22)

- On March 9, 1999, defendant Hawkes prepared an application for a warrant to arrest defendant Marshall.  The application intentionally omitted information crucial to the establishment of probable cause, however.  (Exhibit E) Michael R. Dannehy, the prosecuting attorney to whom the matter was assigned for review, returned the warrant to defendant Hawkes on March 22, 1999, with a

note advising of the additional information which should be provided so that a warrant could issue. (Id. ¶ 23; Exhibit F)

- The prosecuting attorney would have approved the warrant had defendant Hawkes included in his application the facts he had omitted therefrom. (Id. ¶ 24; Exhibit G)

- Instead of revising the application as requested by the prosecuting attorney in Exhibit F, which specifically states that Hawkes should "establish a connection between accused and complainant," however, defendant Hawkes closed the file and took no further action. (Id. ¶ 25; Exhibits H, I)

- Defendant Hawkes, upon receiving the warrant from the prosecuting attorney, contacted the plaintiffs and falsely advised them that the court would not issue a warrant because the case was "a civil matter" but that in fact there was insufficient evidence to warrant even the bringing of a civil suit against defendant Marshall. (Id. ¶ 26)

- Immediately thereafter, defendant Marshall resumed her harassment of the plaintiffs. Finance companies and adult magazines, immediately after Hawkes closed the file, began to send mailings to the plaintiffs' three-year-old son. This is strong circumstantial evidence that defendant Hawkes had told her that he had closed the file. When the plaintiffs reported these facts to defendant Hawkes, he stated that he would stop by "Judy's" after work and advise her to

desist.  (Id. ¶ 27)

• As a result of these events, the plaintiffs filed a complaint against defendant Hawkes with the Clinton Police Department.  An internal investigation was conducted by that department.  In his response to charges brought against him by Chief of Police Joseph Faughnan, defendant Hawkes made at least two statements which contradict his present claims.  Specifically, he told his Chief that his delay in submitting the warrant application was caused by the fact that "I was out sick a few days, training for rectification and the normal work load you get on the 4-12 shift."  In addition, contrary to his present claim that he has never had any acquaintance with defendant Marshall, he stated to his Chief only that "I have no social contact with the Marshall's during these investigation."  (Emphasis added.)  Moreover, Hawkes admitted to his Chief, which he appears now to deny, that he had taken it upon himself to arrange that "only one officer would handle" the issues between us and Mrs. Marshall.  (Id. ¶ 28; Exhibits J, K)

• Chief Faughnan's investigation concluded that the plaintiffs' charges against defendant Hawkes were substantiated and disciplinary action was taken against him.  (Id. ¶ 29; Exhibit L)

• As a result of the intervention of the Clinton Chief of Police, a new and proper application for a warrant to arrest defendant Marshall for criminally harassing the plaintiffs was submitted to the Superior Court.  An arrest warrant

was issued upon probable cause and defendant Marshall was arrested and prosecuted. She applied for accelerated rehabilitation and was placed on probation for a period of two years. (Id. ¶ 30; Exhibit M)

● At defendant Marshall's arraignment, the judge after reviewing the evidence ordered her to stop harassing the plaintiffs, to stay away from them entirely, and not even to be in the same supermarket as they. A protective order was issued against defendant Marshall for the protection of the plaintiffs. (Id. ¶ 30)

● These events were extremely upsetting to the plaintiffs and caused them a great deal of emotional suffering. (Id. ¶ 31)

● No other person or family in the Town of Clinton has been deprived of police protection the way the plaintiffs were. No other citizen of the community has had the experience of a stalker and harasser of their family given police protection and encouragement in their unlawful conduct, as defendant Hawes did for defendant Marshall. (Id. ¶ 32)

The defendants have filed separate motions for summary judgment. This consolidated brief responds to both motions.

The defendants' motions for summary judgment are essentially regurgitations of their earlier motions to dismiss. Defendant Hawkes asserts simply that the plaintiffs cannot prove that they were treated any differently from

other similarly situated citizens.  Defendant Marshall says that, too, and adds that the plaintiffs cannot prove that she and Hawkes acted jointly, and thus that the plaintiffs cannot prove she acted under color of law.  Both defendants also address the plaintiffs' state law claim for the intentional or reckless infliction of emotional distress, arguing that they did not do anything so "extreme and outrageous" as to fall within the meaning of that commonlaw tort.

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support

judgment in the plaintiff's favor.  <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Olin Corp. v. Consolidated Aluminum Corp.</u>, 5 F.3d 10, 14 (2d Cir. 1993); <u>United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103</u>, 998 F.2d 129 (2d Cir. 1993); <u>Union Pacific Corp. v. United States</u>, 5 F.3d 523, 525 (Fed. Cir. 1993).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  <u>In re Unisys Savings Plan Litigation</u>, <u>supra</u>, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  <u>R. B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  <u>Id.</u> at 59, quoting <u>Brady v. Town of Colchester</u>, 863 F.2d 205, 211

13

(2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

Hearsay evidence, while not admissible in support of a motion for summary judgment, is sufficient to defeat a summary judgment motion so long as there is reason to believe that the evidence can be offered in an admissible form at trial.  "[T]he nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp.

v. Catrett, 477 U.S. 317, 324 (1986).  *Cf.*, McMillan v. Experian, 170 F. Supp. 2d 278, 281 (D. Conn. 2001); McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996); Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1990); Tetra Technologies, Inc. v. Harter, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993); Cerniglia v. LeVasseur, 19 Conn. L. Rptr. No. 4, 119 (1997).[1]  "Evidence presented to defeat a summary judgment motion need not be in admissible form, but it must be admissible in content."  Payne v. Pauley, 337 F.3d 767, 775 fn. 3 (7th Cir. 2003).

The outcome of the present motions, insofar as the plaintiffs' Fourteenth Amendment equal protection claim is concerned, is governed by the holding of the Second Circuit in this very case.  DeMuria v. Hawkes, 328 F.3d 704 (2nd, Cir. 2003), holds that the allegations of the complaint here, if proven, establish an equal protection violation.  Although the plaintiffs have been given no opportunity to conduct post-filing discovery, the evidence they have submitted through Mr. DeMuria's detailed affidavit and the 13 attached exhibits is sufficient, construed in the light most favorable to the plaintiffs, to justify a jury's determination that the allegations of the complaint have been established.  Some of the evidence

_____

[1]

"Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."  Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001).

15

against the defendants, such as the evidence of intent and the evidence that

they acted jointly and in concert, is circumstantial in nature.  But there is nothing

wrong with circumstantial evidence.

 Circumstantial evidence is in no way inferior to direct evidence.

"Circumstantial evidence is not less probative than direct evidence, and, in some

instances, is even more reliable."  United States v. Andrino, 501 F.2d 1373, 1378

(9th Cir. 1974).  Even in criminal cases, convictions "can rest solely on

circumstantial evidence, which is intrinsically as probative as direct evidence."

United States v. Young, 568 F.2d 588, 589 (8th Cir. 1978).  In cases involving

prohibited discrimination, circumstantial evidence almost always must be relied

upon to prove a plaintiff's case.  Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d

Cir. 1997).  Cf. Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ("An

employer who discriminates is unlikely to leave a 'smoking gun,' such as a

notation in an employee's personnel file, attesting to a discriminatory intent.").

"We have often acknowledged the utility of circumstantial evidence in

discrimination cases....The reason for treating circumstantial and direct evidence

alike is both clear and deep-rooted.  'Circumstantial evidence is not only

sufficient, but may also be more certain, satisfying and persuasive than direct

evidence.'  Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508 n. 17 , 77 S. Ct.

443, 1 L.Ed.2 493 (1957)."  Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2154

(2003).  "[A] litigant may, and often must, utilize circumstantial evidence to establish the elements of invidious discrimination, which may, in fact, have more probative value.  'As this court has stated on numerous occasions, there is no legal distinction between direct and circumstantial evidence so far as probative [value] is concerned.'" DiMartino v. Richens, 263 Conn. 639, 674-75 (2003), *quoting* State v. Brown, 199 Conn. 14, 22, 505 A.2d 690 (1986).

Here, the plaintiff Michael DeMuria has submitted an affidavit based upon a residence of many years' duration in the small town of Clinton, Connecticut. From personal knowledge, he is able to swear, and does swear, that he and his wife are a true "class of one" within the meaning of the Second Circuit's holding in this case.  "No other citizen of this community has been deprived of police protection the way we have been.  No other citizen of this community has had the experience of a stalker and harasser of their family given police protection and encouragement in their unlawful conduct, as defendant Hawes did for defendant Marshall."  (Plaintiff's Affidavit, ¶ 32)

Moreover, as this court has said, "in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly."  Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003).

As to defendant Marshall's claim that there is no proof she acted jointly

with defendant Hawes, the evidence before this court is far more substantial than that which the Supreme Court deemed sufficient to prove exactly the same thing in Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970).  The plaintiff in that case had participated in a sit-in demonstration to protest the segregation of a public library.  After the police chief told the group that the library had been closed, the group crossed the street to purchase lunch at the defendant's lunch counter. The plaintiff alleged that a police officer entered the store and observed the integrated group sitting together.  Shortly thereafter, a waitress refused service. Upon leaving the restaurant, the plaintiff was arrested on a false charge of vagrancy by the same officer who had observed her at the lunch counter.  In support of its summary judgment motion, the defendant presented affidavits of its manager and employees attesting that they had not seen or communicated with any police officer.  Reversing the order granting summary judgment, the Supreme Court (Harlan, J.) held that the mere presence of the officer was sufficient to permit an inference of conspiracy.  "If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service."  398 U.S. at 155.

The defendants have asked the court to rule, as well, on the state law

claim for intentional or reckless infliction of emotional distress.  Whether the conduct alleged by plaintiff was "extreme and outrageous" within the meaning of established law is a jury question, and the court should not usurp the role of the jury unless no reading of the facts alleged by the plaintiff could constitute the tort. As the court held in Mascia v. Faulkner, No. 349036, pp. 12-13 (New Haven J. D. 1995) (Fracasse, J.):  "Summary judgment is inappropriate for issues involving 'motive, intent and subjective feelings and reactions,' United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376.  [Defendant's] intent, **whether the conduct was extreme and outrageous**, whether [defendant's] conduct caused the [plaintiffs'] distress, and the severity of the [plaintiffs'] distress are all genuine issues of material fact for the jury."  Cf., e.g., Berry v. Loyseau, 223 Conn. 786, 807 (1992); Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988); Gilman v. Gilman, 46 Conn. Sup. 21, 23 (1999); Lugo v. Rodriguez, 8 CSCR 244 (1992); Hansen v. Berger, Lehman Assoc., 9 CSCR 1243, 12 Conn. L. Rptr. No. 17, 555 (1994).  See also Batick v. Seymour, 186 Conn. 632, 646-47 (1982).  Courts in sister jurisdictions take the same position.  E.g., Shubbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996); Halio v. Lurie, 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (2d Dept. 1961); Murphy v. Murphy, 486 N.Y.S.2d 457, 459 (3d Dept. 1985); Flatley v. Hartmann, 138 A.D.2d 345, 525 N.Y.S.2d 637, 638 (2d Dept. 1988); Richard v. Armon, 144 A.D.2d 1, 4, 536 N.Y.S.2d

19

1014, 1016 (2d Dept. 1989); <u>Collins v. Willcox Inc.</u>, 158 Misc.2d 54, 57, 600 N.Y.S.2d 884, 886 (N.Y. County, 1992).

Many courts have held facts no more offensive than those alleged here to be sufficiently "extreme and outrageous" to meet that element of the wrong.

In <u>Berry v. Loyseau</u>, 223 Conn. 786 (1992), an employee was threatened by one employer and assaulted by another.  In <u>Benton v. Simpson</u>, 78 Conn. App. 746 (2003), a supervisor's repeatedly telling three subordinates that they "made him sick" and were a "cancer" in the company not only was sufficiently extreme and outrageous to justify litigation but was sufficient to establish probable cause for a $500,000 attachment of the supervisor's personal assets. In <u>Whelan v. Whelan</u>, 41 Conn. Sup. 519, a husband had falsely told his wife he was suffering from AIDS.  In <u>Brown v. Ellis</u>, 40 Conn. Sup. 165 (1984), the plaintiff's job supervisor had given him work assignments in disregard of his fear of heights.[2]  In <u>Mellaly v. Eastman Kodak Co.</u>, 42 Conn. Sup. 17 (1991), the plaintiff's supervisor had taunted him about his alcoholism.  In <u>Centi v. Lexington Health Care Center</u>, 1997 Conn. Super. LEXIS 1202 (Licari, J.), the court held

---

[2]  "An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil."  <u>Honaker v. Smith</u>, 256 F.3d 477, 492 (7th Cir. 2001).

that the actions of the defendant in terminating the plaintiff's employment were sufficiently extreme and outrageous to be submitted to a jury for determination because the termination of employment was accompanied by a change of work assignments, the setting of unrealistic goals for the employee, the supervisor's coming to the employee's house on a Sunday, and the giving of pretextual reasons for termination.  In Gilman v. Gilman, 46 Conn. Sup. 21, 736 A.2d 199 (1999), the defendant had telephoned the police and falsely reported that her ex-husband was smoking marijuana in his house, at a time when she knew he was entertaining a new girlfriend, resulting in disruption of their dinner.  In Nance v. M.D. Health Plan, Inc., 47 F. Supp. 2d 276 (D. Conn. 1999), the court held that an employer's questioning that signaled to others its belief that the plaintiff was a homosexual could be found sufficiently "extreme and outrageous" in the eyes of a jury to constitute a basis for a finding of intentional infliction of emotional distress.  In Caesar v. Hatford Hospital, 46 F. Supp. 2d 174 (D. Conn. 1999), the court held that an employer's acts in discriminating against the plaintiff and making false reports regarding her to the Department of Public Health were sufficiently "extreme and outrageous" to state a claim for intentional infliction of emotional distress.  In Kennedy v. Coca-Cola Bottling Co. of New York, Inc., 170 F. Supp. 2d 294, 298 (D. Conn. 2001), the court held that the actions of an employer in disclosing to the employees and supervisors involved in wrongdoing

the plaintiff's complaints that they had engaged in a variety of illegal or improper activities at the workplace, with the result that the plaintiff suffered retaliation and harassment, was conduct sufficiently "extreme and outrageous" to go to a jury. In McKelvie v. Cooper, 190 F.3d 58 (2d Cir. 1999), the Second Circuit, applying Connecticut law, held that the alleged actions of police officers in abusing the patron of a bar during a search of the premises could be found by a jury to be sufficiently extreme and outrageous to warrant a verdict in the plaintiff's favor.  In Moss v. Town of East Haven, 2001 WL 1002684, at *2 (Conn. Super. 2001), the court held that a police officer's conduct at the plaintiff's home in threatening the plaintiff "with his hand on his exposed service revolver" while not allowing the plaintiff to leave, was sufficiently "extreme and outrageous" to warrant submitting the action to a jury's determination.  In Bell v. Board of Education, 55 Conn. App. 200, 739 A.2d 321 (1999), the court held that allegations that the defendant imposed a system of education which created a pervasive atmosphere of fear and terror in an elementary school classroom over a two-year period adequately alleged conduct which a jury could find was "extreme and outrageous".[3]  See

_____

[3]  In Appleton v. Board of Education, 254 Conn. 205 (2000), the Supreme Court cited Bell with approval.  Appleton held that an employer's actions in "condescending" to the plaintiff, suggesting to her daughter that she should "take a few days off from work" and having her escorted off the premises by police did not reach the minimum standard articulated in Bell and other cases for conduct which is "extreme and outrageous".

also Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), holding that the actions of a school teacher in humiliating a student in class because of her clinical depression was "extreme and outrageous" under Virginia law.  In Rosten v. Circuit Wise, Inc., 7 C.S.C.R. 1147 (1992), an employer discharged the plaintiff because of her union organizing activities.  In Lugo v. Rodriguez, 8 C.S.C.R. 244 (1992), an attorney intentionally delayed in releasing a lis pendens.  Breach of an oral agreement to restructure a loan was held sufficiently extreme and outrageous in Connecticut National Bank v. Montanari, 9 CSCR 196 (1994). Surveillance by an insurance company to determine the validity of a claim was held sufficiently extreme and outrageous to withstand a motion to dismiss in Bosco v. MacDonald, 13 Conn. L. Rptr. No. 10, 312 (1995).  In a similar case, the United States Court of Appeals for the First Circuit, applying Connecticut law, held that a union officer's conduct over a period of three weeks in driving by a union member's home several times a day and following him when he left his house was sufficiently extreme and outrageous to support a jury verdict in the member's favor.  Johnson v. Teamsters Local 559, 102 F.3d 21 (1st Cir. 1996). See also Anderson v. Drapp, 35 Conn. L. Rptr. No. 11, 415 (2003) (Doherty, J.), holding that criminal stalking over a long period was "extreme and outrageous" within the meaning of the common law.  In Desardouin v. United Parcel Service, Inc., 285 F. Sup. 2d 153, 161 (D. Conn. 2003), the court held that comments by

23

the defendant's driver, made in the presence of the plaintiff's customers, suggesting that the plaintiff was a poor credit risk and arguably making racially demeaning references to him, could be found "extreme and outrageous" so as to survive a motion for summary judgment.  A job supervisor's false accusation of lying, made in the presence of one of the plaintiff's fellow employees, is sufficiently "extreme and outrageous" to warrant submitting the case to the jury. Musacchio v. Cooperative Educational Services, 1995 WL 681664, 1 Conn. Ops. 1319 (1995).  Cf., Decampos v. Kennedy Center, Inc., 1990 WL 264687 at * 4 (1990).  An allegation that a police officer had written a letter in support of his former girlfriend, who was a fellow officer, in which he falsely asserted that a person who had brought charges against her was lying, asserted conduct that was sufficiently extreme and outrageous to survive summary judgment.  Stack v. Jaffee, 248 F. Supp. 2d 100, 104-05 (D. Conn. 2003) (Burns, J.).  A cause of action for intentional infliction of emotional distress was stated in an employment context when the plaintiff alleged that his supervisor "severely harassed and mistreated [him], and created a situation where he was denied effective assistance in the performance of his job, open communication and fairness, unfairly placed on a 60-day performance improvement plan and then constructively fired."  Grossman v. Computer Curriculum Corp., 131 F. Supp. 2d 299, 310-11 (D. Conn. 2000).  An allegation that an employer framed an

24

employee for theft, terminated her with that as an excuse, and then publicly branded her a thief was sufficiently extreme and outrageous to survive a motion to strike in White v. Thornton Oil Corp., 32 Conn. L. Rptr. No. 14, 505 (2002); and later, in a ruling by a different judge, to survive a motion for summary judgment in White v. Thornton Oil Corp., 36 Conn. L. Rptr. No. 8, 279 (2004). The action of a police officer in sending a taunting Christmas card to a pretrial detainee at the Hartford Correctional Center was sufficiently "extreme and outrageous" to survive a motion to strike. Johnson v. Martin, 2 Conn. Ops. 764, 1996 WL 383351, at *3 (Conn. Super. 1996) (Sheldon, J.). In Talit v. Peterson, 44 Conn. Sup. 490, 497-98 (1997) (Blue, J.), the allegation that the defendants had subjected the plaintiff, a coworker, to unjustified criticism and caused her to lose her job for filing a grievance was held sufficiently extreme and outrageous to survive a motion to strike. A verbal threat to commit an assault may be "extreme and outrageous" within the law's meaning. RESTATEMENT (SECOND) OF TORTS § 31 (1965); American Progressive Life & Health Ins. Co. of N.Y. v. Better Benefits, LLC, 35 Conn. L. Rptr. No. 12, 435, 437 (2003) (*dicta*) (Blue, J.). The disputed allegation that the defendant physicians had falsely reported to police that the plaintiff had physically abused his wife, causing the plaintiff to be arrested, were potentially sufficiently extreme and outrageous to require denial of a motion for summary judgment in Pantaleo v. Ravski, 19 Conn. L. Rptr. No. 1,

25

28 (1997) (Silbert, J.).  Terminating an employee in retaliation for his union activities has been held to be sufficiently "extreme and outrageous" to support a jury verdict and award of substantial damages for intentional infliction of emotional distress.  Mihalick v. Cavanaugh, 26 F. Supp. 2d 391, 396 (D. Conn. 1998).  The action of a school official in falsely reporting suspected child abuse to the Department of Children and Families was held sufficiently "extreme and outrageous" to survive a motion for summary judgment in Chain v. Biddle, No. CV-97-0407047 (N.H. Sup. Ct. 1999) (Licari, J.); and to survive a Motion to Strike in Greco v. Anderson, 28 Conn. L. Rptr. No. 17, 605 (2001) (Shortall, J.).  Assigning the plaintiff to a work station close to that of a co-employee who had threatened her and whom she feared was held sufficiently "extreme and outrageous" to survive a motion to strike in Karanda v. Pratt & Whitney Aircraft, 24 Conn. L. Rptr. 521 (1999).

All of these cases found the conduct alleged to be such that a jury representing a fair cross-section of the community should determine whether it was "extreme and outrageous" as required by the law.  Ultimately, it is a community standards test that applies.  For a court to strike a complaint at the pleading stage, or to grant summary judgment prior to trial, constitutes a judicial determination as a matter of law that the alleged conduct is acceptable in our society.  In any case where it is not obvious that the conduct *is* acceptable, the

court should defer to the collective wisdom of the jury.  <u>Faraclas v. Botwick</u>, 32 Conn. L. Rptr. No. 11, 414 (2002).

Other jurisdictions agree with Connecticut's prevailing view that a very wide range of human interaction, when presented as the tort of intentional infliction of emotional distress, can withstand a motion to dismiss.  <u>E.g.</u>, <u>Newby v. Alto Riviera Apartments</u>, 60 Cal. App. 3d 288, 131 Cal. Rptr. 547 (1976) (a landlord's threats to evict a tenant for organizing other tenants); <u>Alcorn v. Anbro Engineering, Inc.</u>, 2 Cal. 3d 493, 468 P.2d 216 (1970) (racial taunting by a supervisor); <u>Contreras v. Crown Zellerbach Corp.</u>, 88 Wash. 2d 735, 741 (1977) (racial jokes by a supervisor); <u>Carroll v. Beyeriche Landesbank</u>, 125 F. Supp. 2d 58 (S.D.N.Y. 2000) (sexual harassment of a female employee); <u>Akers v. Alvey</u>, 338 F.3d 491, 496-97 (6th Cir. 2003) (sexual harassment by supervisor); <u>Patterson v. Xerox Corp.</u>, 901 F. Supp. 274, 279 (N.D. Ill. 1995) (harassment of pregnant employee by supervisor); <u>Pavilon v. Kaferly</u>, 204 Ill. App. 3d 235, 149 Ill. Dec. 549, 561 N.E.2d 1245, 1251 (1990) (employer pressured employee for dates, offered her money for sexual favors, and threatened to rape or kill her); <u>Milton v. Illinois Bell Tel. Co.</u>, 101 Ill. App. 3d 75, 56 Ill. Dec. 497, 427 N.E.2d 829, 832 (1981) (employer engaged in pattern of harassing employee to force her to falsify work reports); <u>Mejia v. City of New York</u>, 119 F. Supp. 2d 232, 285-

86 (E.D.N.Y. 2000) (racial remarks by a police officer[4]); Brown v. Muhlenberg

Township, 269 F.3d 205 (3d Cir. 2001) (police officer shot plaintiff's dog);

Bundren v. Superior Court, 145 Cal. App. 3d 784, 791 (1983) (hospital's attempt

to collect debt while debtor was still hospitalized); Wilson v. Monarch Paper Co.,

939 F.2d 1138 (5th Cir. 1991) (reassigning a college-educated executive to

perform janitorial duties); Mroz v. Lee, 5 F.3d 1016 (6th Cir. 1993) (defamation);

Shubbe-Hirt v. Baccigalupi, 94 F.3d 111 (3d Cir. 1996) (supervisor's verbal

abuse of female subordinate after telling fellow supervisors he was going to "trim

her bush"); Ross v. Saint Augustine's College, 103 F.3d 338 (4th Cir. 1996)

(faculty retaliation against student for testifying on behalf of a professor in a

reverse discrimination case); Jackson v. Brown, 904 P.2d 685 (Utah 1995)

(groom's last-minute cancellation of wedding).  Often, it is not the discrete,

individual acts that rise to the level of extreme and outrageous conduct, but the

pattern of such discrete acts that does so.  *E.g.*, Davignon v. Clemmey, 322 F.3d

1, 6-7 (1st Cir. 2003) ("a long and relentless campaign of harassment and

intimidation").

    This court does not "sit as a seventh juror."  The plaintiffs have a right to

have a jury determine whether the conduct in question is sufficiently outrageous

---

[4]  The court also held that a lower standard for outrageousness applies when the defendant
is a public official, like a police officer, because misconduct by one in a position of power is by
its very nature more offensive than similar misconduct by a private citizen.

to justify an award of damages.  Berry v. Loyseau, supra, 223 Conn. at 807;

Mather v. Griffin Hospital, 207 Conn. 125, 138 (1988).

The motions for summary judgment should be denied.


Respectfully submitted:


_____
JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
(203) 562-9931
FAX: (203) 776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiffs' Attorney


CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Kenneth J. McDonnell, Esq., Gould, Larson, Bennett, Wells & McDonnell, P.O. Box 959, Essex, CT 06426; and Attorney Nicole Fournier, Lynch, Traub, Keefe and Errante, P.O. Box 1612, New Haven, CT 06506-1612.


_____
JOHN R. WILLIAMS