UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN DeMURIA and<br>MICHAEL DeMURIA | : | |
| | : | |
| VS. | : | NO. 3:00CV01591(AHN) |
| | : | |
| ALBERT F. HAWKES and<br>JUDITH A. MARSHALL | :<br>: | APRIL 1, 2004 |

**PLAINTIFFS' CONSOLIDATED LOCAL RULE 56 STATEMENT**

***I   PLAINTIFFS' RESPONSE TO DEFENDANT MARSHALL'S
STATEMENT OF ALLEGED MATERIAL FACTS***

1. Agree.

2. Agree.

3. Agree, but the statement is unduly limited since the plaintiffs were not the only defendants in that litigation.

4. Agree.

5. Agree.

6. Agree that defendant Hawkes went to defendant Marshall's house. Otherwise, disagree.  (See Exhibit D, attached to affidavit of plaintiff Michael DeMuria.)

1

**II    PLAINTIFFS' RESPONSE TO DEFENDANT HAWKES'S STATEMENT OF ALLEGED MATERIAL FACTS NOT IN DISPUTE**

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. There is no Paragraph 5 in the Statement of Defendant Hawkes.

6. Agree, but the statement is unduly limited since the plaintiff was not the only defendant in that litigation.

7. Agree that this is the first documented professional contact in Hawkes's role as a police officer.

4. [Please note that this form of idiosyncratic numbering is that contained in the Local Rule 56 Statement of Defendant Hawkes.] Disagree. (Affidavit of plaintiff Michael DeMuria, ¶¶ 7, 8; Exhibit A)

7. [Please note that this form of numbering is that contained in Defendant Hawkes's Local Rule 56 Statement.] Agree.

8. Disagree. (Affidavit of plaintiff Michael DeMuria, ¶ 11; Exhibit B)

9. Agree.

10. Disagree. (Id. ¶¶ 9, 12; Exhibit C)

11. Disagree. (Id. ¶¶ 13, 14, 15, 16)

2

12. Disagree. (Ibid.)

13. Disagree. (Id. ¶ 17)

14. Disagree. (Id. ¶¶ 18, 19, 20)

15. Agree that defendant Hawkes conducted an investigation as documented in Plaintiffs' Exhibit D. Disagree that the belated application for an arrest warrant was the "culmination" of that investigation. (Id. ¶¶ 21, 22, 23, 24, 25, 26, 27, 28, 29, 30; Exhibits F, G, H, I, J, K, L)

16. Disagree. (Id. ¶¶ 10, 15, 16, 22, 26, 27, 28; Exhibit K)

17. Disagree. (Id. ¶ 27)

18. Agree.

19. Disagree. (Id. ¶¶ 21, 22, 23, 24, 25, 26, 27, 28, 29, 30; Exhibits F, G, H, I, J, K, L)

20. Disagree. (Exhibit I)

21. Agree.

22. Agree.

### III    PLAINTIFFS' STATEMENT OF MATERIAL FACTS

1. The plaintiffs are married and resided together at all times material to this litigation. (Affidavit of Plaintiff Michael DeMuria, ¶ 1)

2. At the times of the events giving rise to this litigation, the plaintiffs I

3

resided at Six College Street in Clinton, Connecticut.  (Id. ¶ 2)

      3.  At the times of the events giving rise to this litigation, the defendant Albert Hawkes was a well-known figure in Clinton.  He was active in local politics, ran for public office and was a corporal in the Clinton Police Department.  (Id. ¶ 3)

      4.  The plaintiff Michael DeMuria and the defendant Judith Marshall are personally acquainted, since both are employed at the Yale-New Haven Hospital.  (Id. ¶ 4)

      5.  On April 14, 1998, the defendant Marshall and her husband initiated civil litigation against a condominium development and the plaintiffs, involving an issue of run-off of surface water onto their property.  At about the same time, Judith Marshall began harassing the plaintiffs.  (Id. ¶ 5)

      6.  In April of 1998, defendant Marshall and her husband advised the plaintiffs that they owned many firearms and might use them against the plaintiffs.  (Id. ¶ 6)

      7.  On the afternoon of September 11, 1998, defendant Marshall telephoned the Connecticut Water Company, represented that she was a member of the plaintiffs' family, stated that the plaintiffs were moving out of the area and requested that the plaintiffs' water be shut off.  As a result, the Connecticut Water Company attempted to turn off the plaintiffs' water service.

(Id. ¶ 7; Exhibit A)

8. The plaintiffs reported this matter to the defendant Hawkes, who promised to investigate it but did not do so.  (Id. ¶ 8)

9. At or about the same time, defendant Hawkes advised the plaintiffs not to have dealings with any police officer other than himself and that he would take charge of all complaints the plaintiffs might have against defendant Marshall. (Id. ¶ 9)

10.  The plaintiffs asked defendant Hawkes directly whether he had any personal relationship with defendant Marshall.  Defendant Hawkes responded that, although as a resident of a small town he knew who she was, he had no other relationship with her or with her husband.  The plaintiffs subsequently learned that these statements by defendant Hawkes were false.  (Id. ¶ 10)

11.  On or about September 30, 1998, the defendant Marshall mailed a card to the plaintiff Michael DeMuria, obviously with the intent that it be seen by the plaintiff Susan DeMuria, which she signed with the pseudonym "Nan" and in which she stated:  "The other day was great lets get together and do it again. Call me.  Love."  (Id. ¶ 11; Exhibit B)

12.  On November 17, 1998, defendant Hawkes placed an entry in the Clinton Police Department internal journal, at page 362, stating: "A number of PSR's have been taken out for Michael Demuria, 6 College St.  As we know,

5

there is an ongoing dispute with his neighbors.  If there are any new complaints from Demuria, please put a copy in my box.  Thanks Gunny"  (Id. ¶ 12; Exhibit C)

      13.  Beginning on November 24, 1998, the defendant Marshall made repeated telephone calls at all hours to the plaintiffs' home.  Some of these calls were threatening in nature, others harassing.  The calls were made on November 24, 1998, at 11:21 a.m.; on November 24, 1998, at 5:25 p.m.; on November 27, 1998, at 8:50 a.m.; on November 30, 1998, at 5:06 p.m.; on December 1, 1998, at 5:54 p.m.; on December 9, 1998, at 6:21 p.m.; on December 9, 1998, at 7:17 p.m.; on December 10, 1998, at 7:05 a.m.; on December 10, 1998, at 4:18 p.m.; on December 10, 1998, at 6:41 p.m.; on December 11, 1998, at 1:17 p.m.; on December 12, 1998, at 11:15 a.m.; and on December 15, 1998, at 11:30 a.m.  The plaintiffs reported these events to defendant Hawkes on December 15, 1998.  (Id. ¶ 13)

      14.  Defendant Hawkes advised the plaintiffs to contact the Southern New England Telephone Company to have a device placed on their telephone that would make a record of the source of the threatening and harassing telephone calls.  However, he provided the plaintiffs with incorrect information for the procedure involved in doing so, with the result that there was a long delay before the device could be installed.  During the entire period of the delay, the calls

continued.  (Id. ¶ 14)

15. The plaintiffs eventually succeeded in having the device placed on theirr telephone.  The threatening and harassing calls stopped that day.  The calls resumed, however, immediately after the telephone company's monitoring device was discontinued two weeks later, demonstrating by strong circumstantial evidence that defendant Hawkes had tipped off defendant Marshall to the monitoring.  (Id. ¶ 15)

16. At that time, the plaintiffs contacted defendant Hawkes again and again asked him to have the device re-installed on their telephone.  Defendant Hawkes told the plaintiffs that the telephone company was unwilling to do so.  When the plaintiffs contacted the telephone company about this, however, they were advised that defendant Hawkes had requested that the device not be re-installed.  (Id. ¶ 16)

17. On January 13, 1999, defendant Marshall telephoned Sweitzer Waste Removal, which provided trash removal service to the plaintiffs' home, and instructed Sweitzer to discontinue the service.  (Id. ¶ 17)

18. On January 25, 1999, defendant Marshall telephoned Testori Excavating Company in Madison, Connecticut, represented herself as being a member of the plaintiffs' family, and placed an order to have their entire back yard excavated.  (Id. ¶ 18; Exhibit D)

19. The plaintiffs learned of these events shortly before the excavation was scheduled to take place and were able to persuade Testori Excavating Company not to do so. (Id. ¶ 19)

20. The plaintiffs thereupon reported this event to the defendant Hawkes who established to a certainty that defendant Marshall had made the telephone call to Testori Excavating Company and so advised the plaintiffs. (Id. ¶ 20; Exhibits D, E)

21. At that time, approximately January 27, 1999, Hawkes promised the plaintiffs that he would promptly apply for a warrant to arrest defendant Marshall. In fact, however, he did not do so. Thereafter, when the plaintiffs periodically inquired about the status of the case, defendant Hawkes provided a series of false excuses for his failure to act. (Id. ¶ 21)

22. Hawkes stated that Mrs. Marshall would never be arrested because she was his friend. (Id. ¶ 22)

23. On March 9, 1999, defendant Hawkes prepared an application for a warrant to arrest defendant Marshall. The application intentionally omitted information crucial to the establishment of probable cause, however. (Exhibit E) Michael R. Dannehy, the prosecuting attorney to whom the matter was assigned for review, returned the warrant to defendant Hawkes on March 22, 1999, with a note advising of the additional information which should be provided so that a

warrant could issue. (Id. ¶ 23; Exhibit F)

24. The prosecuting attorney would have approved the warrant had defendant Hawkes included in his application the facts he had omitted therefrom. (Id. ¶ 24; Exhibit G)

25. Instead of revising the application as requested by the prosecuting attorney in Exhibit F, which specifically states that Hawkes should "establish a connection between accused and complainant," however, defendant Hawkes closed the file and took no further action.  (Id. ¶ 25; Exhibits H, I)

26. Defendant Hawkes, upon receiving the warrant from the prosecuting attorney, contacted the plaintiffs and falsely advised them that the court would not issue a warrant because the case was "a civil matter" but that in fact there was insufficient evidence to warrant even the bringing of a civil suit against defendant Marshall.  (Id. ¶ 26)

27. Immediately thereafter, defendant Marshall resumed her harassment of the plaintiffs.  Finance companies and adult magazines, immediately after Hawkes closed the file, began to send mailings to the plaintiffs' three-year-old son.  This is strong circumstantial evidence that defendant Hawkes had told her that he had closed the file.  When the plaintiffs reported these facts to defendant Hawkes, he stated that he would stop by "Judy's" after work and advise her to desist.  (Id. ¶ 27)

9

28. As a result of these events, the plaintiffs filed a complaint against defendant Hawkes with the Clinton Police Department. An internal investigation was conducted by that department. In his response to charges brought against him by Chief of Police Joseph Faughnan, defendant Hawkes made at least two statements which contradict his present claims. Specifically, he told his Chief that his delay in submitting the warrant application was caused by the fact that "I was out sick a few days, training for rectification and the normal work load you get on the 4-12 shift." In addition, contrary to his present claim that he has never had any acquaintance with defendant Marshall, he stated to his Chief only that "I have no social contact with the Marshall's during these investigation." (Emphasis added.) Moreover, Hawkes admitted to his Chief, which he appears now to deny, that he had taken it upon himself to arrange that "only one officer would handle" the issues between us and Mrs. Marshall. (Id. ¶ 28; Exhibits J, K)

29. Chief Faughnan's investigation concluded that the plaintiffs' charges against defendant Hawkes were substantiated and disciplinary action was taken against him. (Id. ¶ 29; Exhibit L)

30. As a result of the intervention of the Clinton Chief of Police, a new and proper application for a warrant to arrest defendant Marshall for criminally harassing the plaintiffs was submitted to the Superior Court. An arrest warrant was issued upon probable cause and defendant Marshall was arrested and

prosecuted. She applied for accelerated rehabilitation and was placed on probation for a period of two years. (Id. ¶ 30; Exhibit M)

31. At defendant Marshall's arraignment, the judge after reviewing the evidence ordered her to stop harassing the plaintiffs, to stay away from them entirely, and not even to be in the same supermarket as they. A protective order was issued against defendant Marshall for the protection of the plaintiffs. (Id. ¶ 30)

32. These events were extremely upsetting to the plaintiffs and caused them a great deal of emotional suffering. (Id. ¶ 31)

32. No other person or family in the Town of Clinton has been deprived of police protection the way the plaintiffs were. No other citizen of the community has had the experience of a stalker and harasser of their family given police protection and encouragement in their unlawful conduct, as defendant Hawes did for defendant Marshall. (Id. ¶ 32)

                    THE PLAINTIFFS


BY_____
       JOHN R. WILLIAMS (ct00215)
       Williams and Pattis, LLC
       51 Elm Street, Suite 409
       New Haven, CT 06510
       (203) 562-9931
       FAX: (203) 776-9494
       E-Mail: jrw@johnrwilliams.com
       Their Attorney


CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Kenneth J. McDonnell, Esq., Gould, Larson, Bennett, Wells & McDonnell, P.O. Box 959, Essex, CT 06426; and Attorney Nicole Fournier, Lynch, Traub, Keefe and Errante, P.O. Box 1612, New Haven, CT 06506-1612.


_____
JOHN R. WILLIAMS