UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SUSAN DeMURIA and          :
MICHAEL DeMURIA          :
          :
VS.          :     NO. 3:00CV01591(AHN)
          :
ALBERT F. HAWKES and          :
JUDITH A. MARSHALL          :     APRIL 1, 2004

## AFFIDAVIT OF MICHAEL DeMURIA

STATE OF CONNECTICUT    )
    )    SS:    New Haven
COUNTY OF NEW HAVEN    )

MICHAEL DeMURIA, having been sworn, states:

1. I am one of the plaintiffs in this action. I am married to the other plaintiff, Susan DeMuria, and was married to and living with her at all the times hereinafter described.

2. At the times of the events giving rise to this litigation, Susan and I resided at Six College Street in Clinton, Connecticut.

3. At the times of the events giving rise to this litigation, the defendant Albert Hawkes was a well-known figure in Clinton. He was active in local politics, ran for public office and was a corporal in the Clinton Police Department.

1

4.  I knew, and know, the defendant Judith Marshall personally.  She and I both are employed at the Yale-New Haven Hospital.  At the times of all the events which are the subject of this litigation, she and her husband resided in the Town of Clinton, near my wife and me.

5.  On April 14, 1998, the defendant Marshall and her husband initiated civil litigation against a condominium development, my wife and me, involving an issue of run-off of surface water onto their property.  At about the same time, Judith Marshall began harassing my wife and me.

6.  In April of 1998, defendant Marshall and her husband advised us that they owned many firearms and might use them against us.

7.  On the afternoon of September 11, 1998, defendant Marshall telephoned the Connecticut Water Company, represented that she was a member of our family, stated that we were moving out of the area and requested that our water be shut off.  As a result, the Connecticut Water Company attempted to turn off our water service.  A copy of that work order is attached hereto as *Exhibit A*.

8.  My wife and I reported this matter to the defendant Hawkes, who promised to investigate it but did not do so.

9.  At or about the same time, defendant Hawkes advised my wife and me not to have dealings with any police officer other than himself and that he would

2

take charge of all complaints we might have against defendant Marshall.

10.  We asked defendant Hawkes directly whether he had any personal relationship with defendant Marshall.  Defendant Hawkes responded that, although as a resident of a small town he knew who she was, he had no other relationship with her or with her husband.  We subsequently learned that these statements by defendant Hawkes were false.

11.  On or about September 30, 1998, the defendant Marshall mailed a card to me, obviously with the intent that it be seen by my wife, which she signed with the pseudonym "Nan" and in which she stated:  "The other day was great lets get together and do it again.  Call me.  Love."  A copy of that card is attached to this affidavit as *Exhibit B*.  I am familiar with defendant Marshall's handwriting and this card appears to be in her handwriting.

12.  On November 17, 1998, defendant Hawkes placed an entry in the Clinton Police Department internal journal, at page 362, stating: "A number of PSR's have been taken out for Michael Demuria, 6 College St.  As we know, there is an ongoing dispute with his neighbors.  If there are any new complaints from Demuria, please put a copy in my box.  Thanks Gunny" A copy of that memorandum, identified as to source and author, was furnished to me by Lt. William E. Chapman, Commanding Officer of the Patrol Division of the Clinton Police Department, on March 7, 2000.  A copy is attached hereto as *Exhibit C*.

13.  Beginning on November 24, 1998, the defendant Marshall made repeated telephone calls at all hours to our home.  Some of these calls were threatening in nature, others harassing.  The calls were made on November 24, 1998, at 11:21 a.m.; on November 24, 1998, at 5:25 p.m.; on November 27, 1998, at 8:50 a.m.; on November 30, 1998, at 5:06 p.m.; on December 1, 1998, at 5:54 p.m.; on December 9, 1998, at 6:21 p.m.; on December 9, 1998, at 7:17 p.m.; on December 10, 1998, at 7:05 a.m.; on December 10, 1998, at 4:18 p.m.; on December 10, 1998, at 6:41 p.m.; on December 11, 1998, at 1:17 p.m.; on December 12, 1998, at 11:15 a.m.; and on December 15, 1998, at 11:30 a.m. We reported these events to defendant Hawkes on December 15, 1998.

14.  Defendant Hawkes advised us to contact the Southern New England Telephone Company to have a device placed on our telephone that would make a record of the source of the threatening and harassing telephone calls. However, he provided us with incorrect information for the procedure involved in doing so, with the result that there was a long delay before the device could be installed.  During the entire period of the delay, the calls continued.

15.  We eventually succeeded in having the device placed on our telephone.  The threatening and harassing calls stopped that day.  The calls resumed, however, immediately after the telephone company's monitoring device was discontinued two weeks later, demonstrating by strong circumstantial

4

evidence that defendant Hawkes had tipped off defendant Marshall to the monitoring.

16.  At that time, we contacted defendant Hawkes again and again asked him to have the device re-installed on our telephone.  Defendant Hawkes told us that the telephone company was unwilling to do so.  When the we contacted the telephone company about this, however, we were advised that defendant Hawkes had requested that the device not be re-installed.

17.  On January 13, 1999, defendant Marshall telephoned Sweitzer Waste Removal, which provided trash removal service to our home, and instructed Sweitzer to discontinue the service.

18.  On January 25, 1999, defendant Marshall telephoned Testori Excavating Company in Madison, Connecticut, represented herself as being a member of our family, and placed an order to have our entire back yard excavated.

19.  My wife and I learned of these events shortly before the excavation was scheduled to take place and were able to persuade Testori Excavating Company not to do so.

20.  We thereupon reported this event to the defendant Hawkes who established to a certainty that defendant Marshall had made the telephone call to Testori Excavating Company and so advised us.  A copy of his internal police

5

report documenting these events, which I obtained pursuant to the Freedom of Information Act from the Clinton Police Department, is attached hereto as *Exhibit D.*

21.  At that time, approximately January 27, 1999, Hawkes promised us that he would promptly apply for a warrant to arrest defendant Marshall.  In fact, however, he did not do so.  Thereafter, when we periodically inquired about the status of the case, defendant Hawkes provided a series of excuses for his failure to act, which we subsequently realized were false.

22.  In approximately late February of 1999, an acquaintance of ours, who is a journalist and knew defendant Hawkes, reported to us that Hawkes had stated that Mrs. Marshall would never be arrested because she was his friend.

23.  On March 9, 1999, defendant Hawkes prepared an application for a warrant to arrest defendant Marshall.  It is attached hereto as *Exhibit E*  The application intentionally omitted information crucial to the establishment of probable cause, however.  Michael R. Dannehy, the prosecuting attorney to whom the matter was assigned for review, returned the warrant to defendant Hawkes on March 22, 1999, with a note advising of the additional information which should be provided so that a warrant could issue. A copy of that note is attached hereto as *Exhibit F.*

24.  The prosecuting attorney has stated unequivocally in writing that he

6

would have approved the warrant had defendant Hawkes included in his application the facts he had omitted therefrom.  Correspondence between our attorney, Stephen G. Murphy, Jr., and the prosecuting attorney, Michael R. Dannehy, is attached hereto as *Exhibit G*.

25.  Instead of revising the application as requested by the prosecuting attorney in Exhibit F, which specifically states that Hawkes should "establish a connection between accused and complainant," however, defendant Hawkes closed the file and took no further action.  Hawkes's written report closing the entire case on March 29, 1999, is attached hereto as *Exhibit H*.  A memorandum from the Assistant State's Attorney to Hawkes, further documenting these facts, is attached hereto as *Exhibit I*.

26.  Defendant Hawkes, upon receiving the warrant from the prosecuting attorney, contacted my wife and me and falsely advised us that the court would not issue a warrant because the case was "a civil matter" but that in fact there was insufficient evidence to warrant even the bringing of a civil suit against defendant Marshall.

27.  Immediately thereafter, defendant Marshall resumed her harassment of our family.  Finance companies and adult magazines, immediately after Hawkes closed the file, began to send mailings to our three-year-old son.  This is strong circumstantial evidence that defendant Hawkes had told her that he had

closed the file.  When we reported these facts to defendant Hawkes, he stated

that he would stop by "Judy's" after work and advise her to desist.

28.  As a result of these events, my wife and I filed a complaint against

defendant Hawkes with the Clinton Police Department.  An internal investigation

was conducted by that department.  In his response to charges brought against

him by Chief of Police Joseph Faughnan, defendant Hawkes made at least two

statements which contradict his present claims.  Specifically, he told his Chief

that his delay in submitting the warrant application was caused by the fact that "I

was out sick a few days, training for rectification and the normal work load you

get on the 4-12 shift."  In addition, contrary to his present claim that he has never

had any acquaintance with defendant Marshall, he stated to his Chief only that "I

have no social contact with the Marshall's <u>during these investigation</u>."  (Emphasis

added.)  Moreover, Hawkes admitted to his Chief, which he appears now to

deny, that he had taken it upon himself to arrange that "only one officer would

handle" the issues between us and Mrs. Marshall.  A copy of Chief Faughnan's

charges against defendant Hawkes is attached hereto as *Exhibit J.*  A copy of

the relevant portion of Hawkes's response to those charges is attached hereto as

*Exhibit K.*

29.  Chief Faughnan's investigation concluded that our charges against

defendant Hawkes were substantiated and disciplinary action was taken against

him.  A copy of a letter from Chief of Police Faughnan explaining these things is attached hereto, along with the written reprimand administered to defendant Hawkes, as *Exhibit L*.

30.  As a result of the intervention of the Clinton Chief of Police, a new and proper application for a warrant to arrest defendant Marshall for criminally harassing our family was submitted to the Superior Court.  An arrest warrant was issued upon probable cause and Mrs. Marshall was arrested and prosecuted.  At her arraignment, which I attended, the Judge ordered Mrs. Marshall to stay away from my wife and me, not even to be in the same supermarket as we.  The order issued by the judge was called a Protective Order.  Later, Mrs. Marshall applied for accelerated rehabilitation and was placed on probation for a period of two years.  A copy of her application is attached hereto as *Exhibit M*.

31.  These events were extremely upsetting to my wife and me and caused us a great deal of emotional suffering.

32.  We have lived in Clinton for many years.  It is a small town.  No other citizen of this community has been deprived of police protection the way we have been.  No other citizen of this community has had the experience of a stalker and harasser of their family given police protection and encouragement in their unlawful conduct, as defendant Hawes did for defendant Marshall.

9

_____
MICHAEL DeMURIA


Subscribed and sworn to before me this 1st day of April, 2004.


_____
Commissioner of the Superior Court

<u>CERTIFICATION OF SERVICE</u>

On the date above stated, copies hereof were mailed to Kenneth J. McDonnell, Esq., Gould, Larson, Bennett, Wells & McDonnell, P.O. Box 959, Essex, CT 06426; and Attorney Nicole Fournier, Lynch, Traub, Keefe and Errante, P.O. Box 1612, New Haven, CT 06506-1612.

_____
JOHN R. WILLIAMS